**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

J. PAUL BLAKELY, D.O.,

     Plaintiff,

vs.

ANESTHETIX OF IOWA, P.C.,

     Defendant.

No. C04-3031-MWB

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      *1. Undisputed Facts* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      *2. Disputed Facts* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   *B. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
   *A. Standards For Summary Judgment* . . . . . . . . . . . . . . . . . . . . . 14
   *B. Analysis of Dr. Blakely's Discrimination Claim* . . . . . . . . . . . . . . 15
   *C. Analysis of Federal Jurisdiction* . . . . . . . . . . . . . . . . . . . . . . 17
   *D. Dr. Blakely's Remaining Claims* . . . . . . . . . . . . . . . . . . . . . . 20
      *1. Count II - Breach of Contract Claims* . . . . . . . . . . . . . . . . . 20
         *a. Termination Claim* . . . . . . . . . . . . . . . . . . . . . . . . 20
         *c. "Promised" Annual Compensation Claim* . . . . . . . . . . . 23
         *d. Calculation of Annual Compensation Claim* . . . . . . . . . 24
      *2. Count III - Fraudulent Misrepresentation Claim* . . . . . . . . . . . 25
      *3. Count IV - Violation of Iowa Code Chapter 91A Claim* . . . . . . . 28

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

This matter comes before the court pursuant to the defendant's motion for summary judgment. In this case, the plaintiff, a U.S. Citizen anaesthesiologist employee, claims he was discriminated against in violation of Title VII of the Civil Rights Act of 1964. The plaintiff also claims that he was promised a certain annual compensation per year and that the employer breached the terms of the contract by incorrectly calculating and failing to pay the promised amount. Further, he alleges that his employer fraudulently misrepresented the amount of annual compensation that he would be paid and violated wage and hour regulations. The employer contends there are no genuine issues of material fact and that it is entitled to summary judgment as a matter of law on all of the employee's claims.

## I. INTRODUCTION

### A. Factual Background

The court will now identify the core undisputed facts and a sufficient detail of the disputed facts to put in context the parties' arguments for and against summary judgment.

### 1. Undisputed Facts

The defendant, Anesthetix of Iowa ("AOI"), is a professional medical corporation. Its principals are Dr. Steven Gottlieb and Dr. Tushar Ramani. AOI has an exclusive contract to provide anesthesiology services at Trinity Regional Medical Center ("TRMC") in Fort Dodge, Iowa. The court will now provide a brief chronology of the events leading up to Dr. Blakley filing his complaint with this court.

On May 1, 2000, AOI began providing services at TRMC. In January 2002, AOI interviewed an anaesthesiologist named Dr. Nadeem Ahmed. Dr. Ahmed was hired by AOI and signed a contract with AOI on March 13, 2002. However, Dr. Ahmed could not begin work with AOI until after completing pain management and ambulatory surgery fellowships at Duke University. Dr. Ahmed applied for and was granted a J-1 waiver by

Iowa's Conrad-30 Program.[1]

In March 2002, the plaintiff, Dr. J. Paul Blakely ("Dr. Blakely"), submitted his resume for a position with AOI in March, 2002. He indicated his interest in joining AOI's practice upon completion of his training. Dr. Blakely had his contract reviewed by his attorney. Dr. Blakely signed his contract with AOI on April 8, 2002. The contract Dr. Blakely signed stated, in pertinent part:

> For so long as this Agreement continues in force, as compensation for all services under this Agreement, Physician shall on an annual basis receive an amount equal to the Annual Compensation Amount, calculated in the manner described below. Physician shall be permitted to draw $150,000.00 per year, in equal monthly installments, subject to taxes and other applicable withholding, as an advanced payment against the Annual Compensation Amount. At each fiscal year end of the Employer, Physician shall receive a payment such that his entire annual compensation for that year shall be equal to the Annual Compensation Amount for that same year. The Annual Compensation Amount shall be calculated as follows: Start with one hundred percent (100%) of the Net Collections of Employer for a given year, which collected receivables are attributable to patients to whom services were provided during the dates Physician was employed by Employer. Subtract twenty percent (20%). Then subtract all direct and indirect expenses of Employer (except for any draw or salary advances to physician employees), including but not limited to, all physician and nonphysician, full time or locum, employee (or nonemployee) compensation or other payments (whether for

---

[1] The visa most foreign medical graduate physicians use to gain admission to the United States is the J-1 non-immigrant visa. Under a J-1 visa the physician would have to return to his/her home country for a period of two year after completing training in the United States, unless a waiver is granted. The state of Iowa agreed to participate in a program that allowed the state to request waivers for J-1 visa physicians, in exchange the physicians agree to practice in designated medical shortage areas for a specific period of time. Iowa participated in the Conrad-30 program which allowed the state of Iowa to have 30 persons granted J-1 visa waivers. *See* CRS Report for Congress, Immigration: Foreign Physicians and the J-1 Visa Waiver Program, www.bcis.com/images/j-current, June 4, 2004.

services of employees or nonemployees now or hereinafter engaged by the Employer . . . then divide by the number of physicians employed by Employer on a full-time basis during such fiscal year (including Physician), prorated to take into account the number of full months worked by each physician during such fiscal year. The remaining amount shall be the Annual Compensation Amount. The Year End Payment shall be equal to the Annual Compensation Amount less any advanced payment or draw against this amount received by Physician during that fiscal year.

Defendant's Appendix at 19. Dr. Blakely's contract included the following termination language:

Either party to this Agreement may voluntarily elect to terminate this Agreement, without cause, by providing written notice of termination to the other party hereto at least ninety (90) days prior to the effective date of termination. In the event of termination without cause in accordance with the immediately preceding sentence, the Employer reserves the right to require the Physician to cease performing (and cease being paid for) services for or on behalf of the Employer at any time during such ninety (90) day period, and the last day of such service shall be the effective date of termination of this Agreement.

In addition, either party may terminate this Agreement for cause at any time, based upon a material breach by the other party, on thirty (30) days advance written notice describing the breach in reasonable detail; provided, that the party receiving the notice shall have fourteen (14) days following receipt to remedy the breach to the reasonable satisfaction of the other party, thereby reinstating this Agreement.

Notwithstanding the foregoing, this Agreement may be terminated by Employer at any time for cause immediately upon written notice to Physician, should Physician at any time:

. . .

k) Commit or engage in any act or practice, or contribute to circumstances, including without limitation any act or practice described above, which is detrimental to the best interests of the Employer, its practice or its patients, as determined by Employer, in its sole discretion.

Defendant's Appendix at 21-22. Dr. Blakely's contract also stated:

Physician shall be entitled to receive all Compensation and Benefits through the effective date of termination (which date shall be deemed to be the last day of the fiscal year for purposes of calculating the physician's Annual Compensation Amount and Year End Payment under Section 3 of this Agreement).

Defendant's Appendix at 23.

On July 15, 2002, Dr. Blakely began his employment with AOI. Dr. Blakely joined doctors Bala Raja and Abhay Anand, already employed and working as anesthesiologists with AOI. Physicians Raja and Anand were initially employed by AOI at TRMC under 0-1 (Alien of Extraordinary Ability) VISAs. On November 12, 2002, AOI hired Dr. Marco Araujo. He was also hired under an 0-1 VISA. In November, 2002, these physicians made application for and were granted J-1 waivers under the Conrad-30 Program.[2] AOI and Dr. Blakely agree that AOI was attempting to assist Dr. Blakely in obtaining his Georgia and North Carolina licenses and on or about December 9, 2002, Dr. Ramani and Dr. Gottlieb sent recommendation letters, on behalf of Dr. Blakely, to the Georgia Medical Board.

On February 13, 2003, Dr. Ramani, on behalf of AOI, hand-delivered a letter of termination to Dr. Blakely to be effective May 13, 2003. The letter contained the

---

[2] Dr. Blakely argues that AOI prefers to hire visa physicians because visa physicians can be hired at a lesser rate. Dr. Blakely also alleges that AOI was fined over $11,000.00 by the Department of Labor for breaking laws related to the employment of J-1 visa physicians and H1-B workers. Dr. Blakely makes allegations but proffers no evidence in support of his allegations and further information was not provided to the court.

following:

> With this letter, pursuant to the Physician Agreement between Anesthetix of Iowa, P.C. and you, Anesthetix of Iowa, P.C. is exercising its right to terminate your employment without cause.
>
> Also pursuant to the above-referenced Physician Agreement, termination shall be effective in 90 days, May 13th, 2004. Anesthetix of Iowa, P.C. anticipates and expects that you will continue to honor all your obligations under the Physician Agreement.

Defendant's Appendix at 28.

The physician agreement provided that either party, AOI or Dr. Blakely, could voluntarily elect to terminate the agreement, without cause, by providing written notice of termination to the other party at least 90 days prior to the effective date of termination. In the event of termination without cause, AOI reserved the right to require the physician to cease performing (and cease being paid for) services for or on behalf of AOI at anytime during the 90 day period, and the last day of such service would be the effective date of termination of the agreement. On March 20, 2003, AOI terminated Dr. Blakely's employment with AOI effective immediately as permitted under the agreement. AOI admits that only non-U.S. citizen physicians are currently employed by AOI.

## 2. *Disputed Facts*

There are several facts that are in dispute. Dr. Blakely alleges that he was replaced by Dr. Nadeem Ahmed, a non-U.S. citizen J-1 Waiver physician working on an H-1B visa, at a much lower rate than that of Dr. Blakely and every other American citizen who applied for the position. Dr. Blakely contends that the circumstances and actions of AOI infer discrimination and that background circumstances support the suspicion that AOI is an employer who discriminates against the majority on the basis of race and national origin. Dr. Blakely asserts that AOI did not give a legitimate, non-discriminatory reason

for terminating his contract. Dr. Blakely contends, based upon the collection fees to be calculated pursuant to the agreement, that he is owed at least $133,183.41 plus interest. Dr. Blakely asserts that he began employment with AOI with the expectation of making between $350,000.00 and $400,000.00 per year. Dr. Blakely asserts that he was told by AOI that he would earn between $350,000.00 and $400,000.00 per year. AOI denies that such an amount was ever promised or represented to Dr. Blakely by anyone representing AOI's interest. Dr. Blakely proffers e-mail communications, job advertisements and a taped discussion with AOI representatives to support his breach of contract claims. Plaintiff's Appendix Part 1 at 21-45. In response to claims of his professional competence, Dr. Blakely submitted an affidavit to the court addressing the claims of AOI. Dr. Blakely states that he was not aware of any complaints regarding his performance or his professional knowledge until he began to question how AOI calculated his compensation and the hiring practices of AOI. AOI has provided affidavits in response to Dr. Blakely's allegations. Dr. Tushar Ramani is a principal of AOI. In his affidavit he states:

> Having great difficulty in recruiting anesthesiologists to Webster County, Iowa, and with virtually no other applications for this position, AOI hired Dr. Blakely despite concern over his less than glowing professional references and some misgivings about his training in pain management.
>
> Almost immediately upon beginning practice, AOI began receiving verbal complaints about Dr. Blakely from co-workers, surgeons, nursing staff, patients, and hospital administration, mostly related to his weak clinical abilities, his lack of professionalism, and his poor interpersonal skills. These complaints increased over subsequent months, but because of the severe nationwide shortage of pain-management-fellowship-trained anesthesiologists, and the particular great difficulty of replacing such a high demand specialty in our rural community, it was AOI's hope to retain Dr. Blakely despite this high level of its client's dissatisfaction with his work. . . . On November 21, 2002, I personally spoke with Dr. Blakely about a number of issues including

complaints from patients regarding his behavior towards them (rudeness, incomplete explanations, etc.), complaints from surgeons and patients about the difficulty he was having inserting intravenous lines for fluids and medications, and complaints from nurses and co-workers about his behavior and personal hygiene (offensive body odor, unkempt[sic] appearance, etc.) I counseled with Dr. Blakely again in a phone call to him in early December, 2002. I reminded him that it was AOI's collective obligation to meet AOI's customers needs and that the surgeons, patients and hospital staff were all customers.

Defendant's Appendix, Affidavit of Dr. Tushar Ramani at 1-3. AOI also submitted a Supplemental Affidavit of Dr. Ramani. Dr. Ramani stated in his supplemental affidavit:

Dr. Blakely states that he submitted his resume to recruiter Robert Kelsey and Associates. He says Robert Kelsey referred the case to Randi Lynn. He claims Randi Lynn made a promise to him that AOI would pay him $400,000.00 per year. Anesthetix of Iowa has never had any relationship or contact with Robert Kelsey and Associates.

. . .

Blakely makes repeated reference to the fact that we offered him an opportunity to work in our practices in Georgia or North Carolina. Sometimes he claims that this was so that we could replace him with a J-1 visa physician at a lower cost. Because AOI has identical compensation terms with all its physicians - U.S. Citizens or otherwise - we would gain no cost advantage by replacing one with another.

Defendant's Supplemental Appendix, Affidavit of Dr. Tushar Ramani at 1-5.

Linda Whaley, a member of the senior administrative team at TRMC, stated in her affidavit:

Based on comments from patient satisfaction surveys, comments from surgeons, operating room, post-anesthesia care unit, outpatient surgery, and inpatient nursing staff, it was my belief that Dr. Blakely created an atmosphere that was totally unprofessional. Dr. Blakely was counseled regarding his behavior by Patricia Lake, manager of surgical services, Dr.

Bala Raja, medical director of anesthesia for Trinity, and Dr. Tushar Ramani, a principal with AOI.

Defendant's Appendix, Affidavit of Linda Whaley at 11.

Patricia Lake, manager of surgical services at TRMC, stated in her affidavit:

> I received written patient satisfaction surveys, along with verbal patient comments that were negative about Dr. Blakely's care. Trinity staff and physicians also came to me with frequent concerns about his communication skills and occasionally his clinical skills. . . . On one occasion I visited with Dr. Blakely about doing surgery on a patient with low potassium when he told the staff he only knew where the "normal column" was for labs. On another occasion Dr. Blakely asked a patient if she wanted to have needles stuck in her neck or "just go to sleep". Besides physician concerns about this clinical skills, Dr. Blakely created an atmosphere that was unprofessional in the operating room and repeated counseling did not seem to make a difference in his behavior. . . . About the time that he was finally terminated I heard Dr. Blakely making racist remarks to staff. I finally told him he needed to stop. He then came into my office and expressed his displeasure with doctors from third world countries. He made the comment that "how would you like being replaced from people coming from Osma Bin Laden's country."

Defendant's Appendix, Affidavit of Patricia Lake at 13-14.

Sue Thompson, Chief Operating Officer at TRMC, stated in her affidavit:

> The Fort Dodge community has been designated by the federal government as a Health Professional Shortage Area. This classification permits physicians granted J-1 VISAs to obtain a license to practice medicine within those locations in Iowa. J-1 VISA physicians have been employed in a number of medical specialties in an effort to provide badly needed medical services to the underserved Ford Dodge community and surrounding rural area.

Defendant's Appendix, Affidavit of Sue Thompson at 15-16.

AOI alleges that Dr. Blakely's treatment of patients was detrimental to AOI's best

interests and exercised its right to terminate Dr. Blakely without cause per the agreement. Although Dr. Blakely has admitted that the agreement allowed either party to terminate the agreement without cause. He submitted an affidavit to the court stating that he was involved with a least 2,000 different patients of which three or four may have made complaints. Affidavit of Dr. Paul Blakely at 5. Dr. Blakely also stated in his affidavit:

> 12. After a discussion with Dr. Gottlieb on March 20, 2003 regarding the financial information he had promised to provide me, I received letter dated March 20, 2003 stating that my employment was being terminated immediately.
> . . .
> 16. I have met with my accountant, Alan Ryerson, regarding the 2002 and 2003 Annual Compensation Amounts and according to his calculations set forth on his attached report, which are based on the information provided by AOI with respect to charges, write-offs, and collections, I am entitled to an additional $86,795.27 pursuant to Section 3 of the Agreement. See attached report he provided.
> . . .
> 18. At the time I commenced employment with AOI, it employed a total of three anesthesiologists, including myself. In October 2002, a fourth anesthesiologist joined AOI. The other three anesthesiologists were all non-U.S. citizens who were working in the country on H-1B visas. At no time did I ever make any racist statements about these anesthesiologist or other non-U.S. citizens employed by AOI.
>
> 19. I have since become aware from current and former employees of AOI that AOI has lost at least 8 physicians in order to create an all foreign visa worker workforce in Fort Dodge, IA.
> . . .
> 33. Ultimately, AOI made false representations to me about my salary and as soon as I began to question them about it and their hiring practices and I realized they gave me no reasons for firing me. Based on the way they did business it was my race and citizenship that was the real reason for my discharge.

Plaintiff's Appendix Part 2, Affidavit of Dr. Paul Blakely at 113, 116.

Dr. Blakely states that Dr. Ramani never showed him any complaints about unprofessional behavior or poor work skills. Dr. Blakely states he was being recruited by AOI to go to its Georgia and North Carolina locations up until the last week he worked for AOI. Dr. Blakely alleges that AOI wanted him to move to another facility so that AOI could recapture more profits by not paying full earnings to doctors. Dr. Blakely alleges that AOI wanted to place a non-U.S. citizen in his position to maximize profits because AOI could place non-U.S. citizens in this position for less money. Dr. Blakely also alleges that Dr. Ramani and Dr. Gotlieb were trying to move Dr. Blakely to Georgia or North Carolina so they could hire non-U.S. citizens who were working on J-1 visa waiver H-1B visas. AOI denies that it wanted to move Dr. Blakely to make more room for visa waivered anesthesiologists. AOI states that it is still not at full staffing levels. Dr. Blakely contends that he is unable to determine whether AOI is at full staffing levels based on the lack of documentation provided by the defendant. AOI asserts that it is not an employer that discriminates against the majority. AOI states that only non-U.S. citizen physicians are currently employed by AOI because it has difficulty attracting U.S. citizen physicians to AOI's anesthesia practice. AOI states that it has not rejected one qualified U.S. physician applicant for employment.

Dr. Blakely alleges that AOI would be unjustly enriched if it is permitted to keep wages that he earned. Dr. Blakely alleges that the language of the contract supports a finding that his compensation was not calculated correctly. Additionally, Dr. Blakely states he has requested information regarding the compensation formula and how it affected each physician but that he has not been provided this information. Dr. Blakely states that he requested a complete and detailed explanation of the origin of the numbers in the tables used to calculate compensation but AOI failed to provide this information. AOI has provided the court with its fiscal data and calculations. Dr. Blakely has provided the court

with his fiscal data and calculations. The parties' manipulation of the numbers and calculations result in two different annual compensation figures. Dr. Blakely alleges that he requested copies of payroll documents and documents showing the number of employees working for AOI but that AOI has failed to provide the documents. Dr. Blakely alleges that there is a disagreement as to how to define and interpret terms of the agreement such as "fiscal year". Dr. Blakely points out that the contract discusses annual compensation in terms of the employer's fiscal year, however, his discussions with AOI indicated that calculations were made every six months. Dr. Blakely also alleges there is a disagreement as to whether AOI had an obligation or responsibility towards payment of any compensation or benefits after the effective date of his termination. Dr. Blakely admits that a check in the amount of $10,326.97 was sent to his attorney but states that based on figures anticipated by Dr. Blakely's accountant the compensation should have been closer to $87,795.27. Dr. Blakely alleges that there was restrictive language so that by cashing the check Dr. Blakely would have lost his right to dispute AOI's calculations.

AOI asserts that Dr. Blakely has provided no evidence that his ethnicity or U.S. citizenship was a motivating factor for his discharge. AOI states that Dr. Blakely has not been replaced by anyone and that there is no credible evidence by which any jury could conclude that AOI's discharge of Dr. Blakely was based on his ethnicity or status as a U.S. citizen. AOI states that it did not promise to pay Dr. Blakely a certain income, that it did not mislead Dr. Blakely as to his potential compensation, and further AOI denies that it incorrectly calculated Dr. Blakely's compensation. AOI asserts that Dr. Blakely has generated no genuine issues of material fact as to any claim.

### B. Procedural Background

Dr. Blakely filed his Complaint in this action on April 6, 2004, alleging race and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 (Count I); Breach of Contract (Count II); Fraudulent Misrepresentation (Count III); and

Violation of Iowa Wage Payment Collection Act (Count IV). In its Answer, filed May 13, 2004, AOI denied all of Dr. Blakely's claims.

AOI's motion for summary judgment, which is now before the court, was filed on March 1, 2005. In that motion, AOI seeks summary judgment in its favor on all of Dr. Blakely's claims. Dr. Blakely resisted AOI's motion for summary judgment on March 25, 2005. In his resistance, Dr. Blakely contends that he is entitled to proceed on all his claims. Dr. Blakely did request oral arguments in the caption of his resistance but he failed to include a request for oral arguments as required by the local rules in the last paragraph of his motion.[3] It is the court's strong preference to grant oral arguments, whenever requested, however, in this case, the court has not found oral arguments necessary to the resolution of AOI's motion for summary judgment in this case. Moreover, the court's busy schedule—including post-trial motions in one federal death-penalty case and the trial of a second federal death-penalty case—has not permitted the timely scheduling of oral arguments sufficiently in advance of trial in this matter to permit timely resolution of the motion for summary judgment. Therefore, the court will resolve AOI's motion for summary judgment on the parties' written submissions. AOI filed a reply in further support of its motion for summary judgment on March 30, 2005. The court is now ready to proceed to the disposition of AOI's motion for summary judgment.

## II. LEGAL ANALYSIS

The court will now turn its attention to a brief survey of the standards applicable to AOI's motion for summary judgment, then to the application of those standards to the critical issues involved in this case.

---

[3] Local Rule 7.1(d) requires that: "A request for oral argument in a motion or brief must be noted separately in both the caption and the conclusion of the document, and must be supported by a showing of good cause."

### A. Standards For Summary Judgment

As this court has explained on a number of occasions, applying the standards of Rule 56 of the Federal Rules of Civil Procedure providing for summary judgment, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir. 1990). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Quick*, 90 F.3d at 1377 (same).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1107 (8th Cir. 1998); *Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir. 1993). When a moving party has carried its burden under Rule 56©, the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324; *Rabushka ex. rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997), *cert. denied*, 523 U.S. 1040 (1998); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir. 1995); *Beyerbach v. Sears*, 49 F.3d 1324, 1325 (8th Cir. 1995). An issue of material fact is "genuine" if it has a real basis in the record. *Hartnagel*, 953 F.2d at 394 (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87). "Only disputes over facts that might affect the outcome of the suit

under the governing law will properly preclude the entry of summary judgment," *i.e.*, are "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Beyerbach*, 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir. 1997). Ultimately, the necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994). Finally, this court has repeatedly taken note of the rule in this circuit that, because summary judgment often turns on inferences from the record, summary judgment should seldom or rarely be granted in employment discrimination cases. *See, e.g., Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994) (citing *Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir. 1991)). The court will apply these standards to AOI's motion for summary judgment

## B. *Analysis of Dr. Blakely's Discrimination Claim*

AOI contends that it is entitled to summary judgment on Dr. Blakey's discrimination claim, because there is no evidence that Dr. Blakely was terminated because of his race or national origin. Procedurally, the moving party, AOI, bears "the initial responsibility of informing the district court of the basis for their motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553); *see also Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). Dr. Blakely is required to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P.

56(e). If the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. Each of the parties arguments focus on whether or not Dr. Blakely has a prima facie case for race and national origin discrimination.

The problem with Dr. Blakey's claim of "race and national" origin is that the crux of this claim relies not on "race" or "national origin", but on the fact that he is a U.S. citizen. Dr. Blakely's allegations and argument are not that he is being discriminated against because he is a Caucasian. Dr. Blakely proffers no evidence or argument that he is being discriminated against because of his "race" or "national origin". Each time he asserts an argument that he was discriminated against the argument relies on the fact that he is a "U.S. citizen." He asserts that AOI discriminates against "U.S. citizens" because of its preference to hire J-1 visa physicians. Dr. Blakely asserts that he was terminated because he is a "U.S. citizen" and that AOI wanted to replace him with a J-1 visa physician. The Supreme Court of the United States, in *Espinoza v. Farah Manufacturing Co.*, 414 U.S. 86, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973), delineated the breadth of the statutory term "national origin" in Title VII. In that case, the Supreme Court held that Title VII's prohibition against "national origin" discrimination protects against discrimination in the workplace on the basis of "where a person was born, or more broadly, the country from which his or her ancestors came." *Id.* at 88. Having accorded that interpretation to "national origin," the Supreme Court then added that the reach of Title VII's ban against national origin discrimination did not go so far as to prevent discrimination in employment solely on the basis of an employee's *citizenship*. "Nothing in Title VII makes it illegal to discriminate on the basis of citizenship or alienage." *Id.* at 95. Dr. Blakely's claim of discrimination does not involve a protected characteristic. Dr. Blakely's claim is one of discrimination based on citizenship, a claim that is not cognizable under Title VII. Accordingly, Dr. Blakely's claim of discrimination under Title VII cannot

survive summary judgment. Therefore, AOI's motion for summary judgment is granted. The court, by granting AOI's motion for summary judgment on Dr. Blakely's only federal claim, must now determine whether it retains jurisdiction of Dr. Blakely's remaining state law claims.

## C. Analysis of Federal Jurisdiction

At the time this case was filed, the court had original jurisdiction under 28 U.S.C. § 1331, which confers original jurisdiction on United States District Courts over civil actions arising under federal laws, treaties or the United States Constitution. Count I of Dr. Blakely's suit was a claim of discrimination in violation of the Civil Rights Act of 1964. As long as a federal claim existed, the court also had supplemental jurisdiction over Dr. Blakely's state law claims pursuant to 28 U.S.C. § 1367(a). As a result of the court's ruling, regarding Dr. Blakely's discrimination claim, the court no longer has original jurisdiction. The question this court must now answer, is whether it should continue to exercise its supplemental jurisdiction over the remaining state law claims. The court will consider the values of economy, convenience, comity and fairness to the parties before making a decision.

The statute defining the supplemental jurisdiction of the federal courts provides as follows:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). The Eighth Circuit Court of Appeals has observed that the word "shall" in the phrase "shall have supplemental jurisdiction" "is a mandatory command." *McLaurin v. Prater*, 30 F.3d 982, 984 (8th Cir. 1994). The court of appeals pointed out further that:

> Congress has directed that federal district courts 'shall' have jurisdiction in both 28 U.S.C. § 1331 (1988) (federal question jurisdiction) and 28 U.S.C. § 1332 (1988) (diversity jurisdiction), and the accepted import of the terms is that federal courts must accept and cannot reject jurisdiction in such cases.

*McLaurin*, 30 F.3d at 984-85 (citing *McCarthy v. Madigan*, 503 U.S. 140, 145-47 (1992), and *Willcox v. Consolidated Gas Co.*, 212 U.S. 19, 40 (1909)).

There are exceptions to this mandate, however, and some of those exceptions are cast in discretionary terms. *Id.* at 985 (citing 28 U.S.C. § 1367). A court "may decline to exercise supplemental jurisdiction" if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

This subsection gives a court the discretion to reject jurisdiction over supplemental claims, "but only to a point." *McLaurin*, 30 F.3d at 985. "The statute plainly allows the district court to reject jurisdiction over supplemental claims only in the four instances described therein." *Id.* Thus, where the case clearly fits within one of the subsections listed above, the court may decline to exercise supplemental jurisdiction. *Packett v. Stenberg*, 969 F.2d 721, 726-27 (8th Cir. 1992); *see also O'Connor v. State of Nev.*, 27 F.3d 357, 362 (9th Cir. 1994), *cert. denied*, 514 U.S. 1021 (1995); *Growth Horizons, Inc. v. Delaware County, Pa.*, 983 F.2d 1277, 1285 n. 14 (3d Cir. 1993); *Chesley v. Union Carbide Corp.*, 927 F.2d 60, 65-66, n.3 (2d Cir. 1991); *Carroll v. Borough of State College*, 854 F. Supp. 1184, 1200 (M.D. Pa. 1994), *aff'd mem.*, 47 F.3d 1160 (3d Cir.

1995). The Eighth Circuit Court of Appeals has counseled that, once one of the grounds listed in § 1367(c) is present, the court's discretion "should be guided by considerations of judicial economy, convenience, and fairness to the litigants." *Cossette v. Minnesota Power & Light*, 188 F.3d 964, 973 (8th Cir. 1999); *accord Allen v. City of Los Angeles*, 92 F.3d 842, 846 (9th Cir. 1996) (noting that court "should consider whether the exercise of jurisdiction advances 'the values of economy, convenience, fairness, and comity.'") (quoting *Executive Software v. United States Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994)), *overruled in part, Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir. 1997) (*en banc*). However, "in the absence of the circumstances described in subsections (b) and (c), § 1367(a) requires the district court to accept supplemental jurisdiction over the state-law claims [the plaintiff] has raised in [the] case." *McLaurin*, 30 F.3d at 985.

This case clearly fits within § 1367(c), because it is a case in which "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). That being so, "the court should consider whether the exercise of jurisdiction advances 'the values of economy, convenience, fairness, and comity.'" *Allen*, 92 F.3d at 846. Furthermore, "[i]t is the law of this circuit that 'the substantial investment of judicial time and resources in the case . . . justifies the exercise of jurisdiction over the state claim, even after the federal claim has been dismissed.'" *Pioneer Hi-Bred Int'l v. Holden Foundation Seeds, Inc.*, 35 F.3d 1226, 1242 (8th Cir. 1994) (quoting *North Dakota v. Merchants Nat'l Bank & Trust Co.*, 634 F.2d 368, 371 (8th Cir. 1980)) (*en banc*), and also citing *Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc.*, 989 F.2d 985, 993 (8th Cir.), *cert. denied*, 510 U.S. 928 (1993), and *First Nat'l Bank & Trust Co. v. Hollingsworth*, 931 F.2d 1295, 1307-08 (8th Cir. 1991)); *accord Murray v. Wal-Mart, Inc.*, 874 F.2d 555, 558 (8th Cir. 1989) (also stating that retention of jurisdiction is proper in such circumstances).

Guided by these considerations, the court will retain supplemental jurisdiction over

Dr. Blakely's remaining state-law claims. This court has already invested substantial resources in pre-trial administration so as to make retention of jurisdiction appropriate. *Pioneer Hi-Bred Int'l*, 35 F.3d at 1242; *Murray*, 874 F.2d at 558. Furthermore, this matter is set for a jury trial in this court in just over one month. The shortness of time before trial scheduled in this court and the uncertainties of the availability of a comparable trial date in state court means that there are no "factors such as convenience, fairness, and comity" suggesting that remand should be preferred. *Pioneer Hi-Bred Int'l*, 35 F.3d at 1242; *Cossette*, 188 F.3d at 973; *Murray*, 874 F.2d at 558. Therefore, the court will now turn to AOI's motion for summary judgment on Dr. Blakely's remaining claims.

### D. Dr. Blakley's Remaining Claims

### 1. Count II - Breach of Contract Claims

Dr. Blakely claims that when AOI terminated him that AOI breached the terms of the employment contract. Additionally, Dr. Blakely claims AOI breached the employment contract by failing to pay him the amount AOI promised and by incorrectly calculating his Annual Compensation Amount. AOI contends that it is entitled to summary judgment on these claims, as well. Under Iowa law, to prove a breach of contract claim, Dr. Blakely must prove the following: (1) an employment contract existed between the parties; (2) the terms and conditions of the contract; (3) Dr. Blakely fulfilled the terms and conditions of the contract; (4) AOI breached the contract in some manner; and (5) Dr. Blakely suffered damages as a result of the breach. *Van Arkel v. Warren Country*, 365 F.Supp.2d 979, 986-987 (S.D. Iowa 2005) (*citing Kish v. Iowa Cent. Cmty. Coll.*, 142 F.Supp.2d 1084, 1093 (N.D. Iowa 2001). AOI and Dr. Blakely do not deny that there was a contract. AOI does deny that it breached the contract.

### a. Termination Claim

Dr. Blakely asserts that he received no written warning, no 30-day period to improve, no probationary period, and had not committed an extreme violation of company

policies or misconduct. AOI contends that it terminated Dr. Blakely without cause as permitted by the physician agreement. AOI states there is no dispute that Dr. Blakely's termination was requested by TRMC. AOI contends that it had the contractual right to terminate Dr. Blakely's employment at any time during the 90 day period of notification. AOI contends that the agreement allowed them to terminate the agreement without cause.

The physician agreement contained the following language regarding termination:

> Either party to this Agreement may voluntarily elect to terminate this Agreement, without cause, by providing written notice of termination to the other party hereto at least ninety (90) days prior to the effective date of termination. In the event of termination without cause in accordance with the immediately preceding sentence, the Employer reserves the right to require the Physician to cease performing (and cease being paid for) services for or on behalf of the Employer at any time during such ninety (90) day period, and the last day of such service shall be the effective date of termination of this Agreement.

> In addition, either party may terminate this Agreement for cause at any time, based upon a material breach by the other party, on thirty (30) days advance written notice describing the breach in reasonable detail; provided, that the party receiving the notice shall have fourteen (14) days following receipt to remedy the breach to the reasonable satisfaction of the other party, thereby reinstating this Agreement.

> Notwithstanding the foregoing, this Agreement may be terminated by Employer at any time for cause immediately upon written notice to Physician, should Physician at any time:

> . . .

> k) Commit or engage in any act or practice, or contribute to circumstances, including without limitation any act or practice described above, which is detrimental to the best interests of the Employer, its practice or its patients, as determined by

Employer, in its sole discretion.

Defendant's Appendix at 21-22.

Either party could voluntarily elect to terminate the agreement, without cause, by providing written notice of termination at least ninety (90) days prior to the effective date of termination. The agreement also provided that AOI reserved the right to require Dr. Blakely cease performing (and cease being paid for) services for or on behalf of AOI at any time during the ninety day period, and the last day of such service would be the effective date of termination. On February 13, 2003, AOI hand delivered a letter pursuant to the agreement noting that it was exercising its right to terminate Dr. Blakely's employment without cause and that the ninety day effective date of May 13, 2003 would be his last day of employment. Defendant's Appendix at 28. In a letter dated March 20, 2003, Dr. Blakely was informed that pursuant to the agreement AOI was exercising its right to terminate his employment "effective today, March 20, 2003." Defendant's Appendix at 29.

The court finds that AOI, pursuant to the agreement, could terminate Dr. Blakely without cause. AOI complied with the agreement when it terminated Dr. Blakely without cause. Dr. Blakely was not terminated for cause or for committing a material breach, therefore he was not provided a thirty (30) day advance written notice describing the breach in reasonable detail, nor was he given fourteen (14) days following receipt to remedy the breach. Further, Dr. Blakely admitted in his answer:

> Plaintiff admits that the agreement provided that either party, Anesthetix of Iowa, P.C. or Dr. Blakely, could voluntarily elect to terminate the Physician Agreement, without cause, by providing written notice of termination to the other party at least 90 days prior to the effective date of termination. Plaintiff admits that the contract speaks for itself and has additional language but affirmatively states that compensation was not calculated correctly.

Plaintiff's Resistance Brief at 10. The court finds that there is no genuine issue of material

fact as to Dr. Blakely's termination because he admits that the contract allowed AOI to terminate the contract at will. Dr. Blakely proffers no evidence that AOI did not follow the contract termination language. Accordingly, the court finds that summary judgment in favor of AOI is appropriate on this portion of Dr. Blakely's breach of contract claim.

### c. "Promised" Annual Compensation Claim

It is Dr. Blakely's contention that AOI promised that he would be paid an Annual Compensation Amount between $350,000.00 and $400,000.00 per year. In response to Dr. Blakely's claims, AOI denies that it ever promised Dr. Blakely that he would be paid a specific amount. AOI asserts that the annual compensation and integration language contained in the contract prohibit Dr. Blakely from succeeding on this claim. The employment contract does not provide a specific amount as to the annual compensation that Dr. Blakely was to be paid. The contract does include a calculation formula that AOI uses to determine the amount of annual compensation of its physicians. Further, the integration language of the contract states:

> The foregoing contains the entire understanding of the parties, and there are no other undertakings or agreements beyond those expressly set forth herein. No amendments or additions to this Agreement shall be binding unless in writing and signed by both parties.

Defendant's Appendix at 26. When the parties signed the employment contract both parties agreed that "no other undertakings or agreements beyond those expressly set forth herein" and "no amendments or additions to this Agreement shall be binding unless in writing and signed by both parties." Defendant's Appendix at 26. An agreement is fully integrated when the parties involved adopt a writing as the final and complete expression of the agreement. *S & W Agency, Inc. v. Foremost Ins. Co.*, 51 F.Supp.2d 959, 967 (N.D. Iowa 1998). And, an integrated contract provides the "complete parameters for defining the method, extent, and standard of performance." *Schooley v. Orkin Exterminating Co., Inc.*, 2004 WL 3168274 *8 (S.D. Iowa). Dr. Blakely's contract

contained integration language. Dr. Blakely's claim of breach regarding how much he should have been paid stems from alleged employment discussions that occurred before he signed the contract. Upon signing the contract, Dr. Blakely agreed that the contract language would be controlling and any discussions outside of the agreement were not binding on either party. As AOI asserts, even if Dr. Blakely had been told that he could make, or that the expectation was payment between $350,000.00 and $400,000.00 per year, the clear language of the agreement does not guarantee or promise this amount. By signing the agreement, Dr. Blakely accepted the employment contract as the final and complete expression of his employment terms.

After reviewing the record and the contract, the court finds that it is understandable how Dr. Blakely could have the expectation of making an annual compensation between $350,000.00 and $400,000.00 - - or more; however, the record and the facts of this case support a finding that the contract language does not guarantee an exact amount of annual compensation and the integration language is controlling. The court finds AOI's is entitled to summary motion as to Dr. Blakely's alleged breach of contract based on a "promised" amount of annual compensation.

### d. Calculation of Annual Compensation Claim

Dr. Blakely also claims that AOI breached the contract by incorrectly calculating his annual compensation. AOI asserts that it has properly calculated Dr. Blakely's annual compensation in accordance with the terms of the agreement. The contract provides a formula for calculating Dr. Blakely's Annual Compensation Amount and the contract allows Dr. Blakely an annual salary draw of up to $150,000.00 per year. Dr. Blakely's draw was to be divided into equal monthly installments, subject to taxes and other applicable withholdings, as an advanced payment against the Annual Compensation Amount. The Annual Compensation Amount was to be calculated at the end of each fiscal year of the employer, AOI. The Annual Compensation Amount was to be calculated by

starting with one hundred percent (100%) of the Net Collections of Employer for a given year. AOI then subtracted "all direct and indirect expenses of AOI." The proffered evidence creates a question as to what is included and defined by the contract terms "all direct and indirect expenses of AOI." The amount is also prorated to take into account the number of full months worked by each physician during such fiscal year. The contract includes language indicating that the annual compensation would be calculated on AOI's fiscal year. Dr. Blakely asserts that if AOI had properly calculated the figures that he should have been paid between $350,000.000 and $400,000.00 per year. Further, Dr. Blakely has proffered evidence that AOI was calculating his annual compensation every six months and the agreement states that the annual compensation would be calculated at the end of AOI's fiscal year. Plaintiff's Appendix Part 1.

Each of the parties has submitted to the court financial data and calculations. Because evidence has been proffered by Dr. Blakely in support of his allegations that AOI breached his contract by incorrectly calculating his annual compensation, he has established a genuine issues of material fact. It is not at this juncture that the court must determine whether AOI calculated Dr. Blakely's annual compensation every six months or at the end of its fiscal year. Nor must the court, at this time, have to consider if direct and indirect expenses were properly included or whether AOI calculations are correct. At this time, the court must only determine whether there are genuine issues of material fact as to the annual compensation amount Dr. Blakely should have received. Because Dr. Blakely has met his burden at this stage, the court denies AOI's motion for summary judgment as to this claim.

## 2. *Count III - Fraudulent Misrepresentation Claim*

The Iowa Supreme Court has recognized that fraudulent misrepresentation can be asserted as a tort claim for damages. Dr. Blakely must establish the following elements to bring a claim of fraudulent representation: "(1) a material (2) false (3) representation

coupled with (4) scienter and (5) intent to deceive, which [he] (6) rel[ied] upon with (7) resulting damages." *Utica Mut. Ins. Co. v. Stockdale Agency*, 892 F.Supp. 1179, 1192-1193 (N.D. Iowa 1995) (citing *Bates v. Allied Mut. Ins. Co.*, 467 N.W.2d 255, 260 (Iowa 1991)); *see also Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 400 (Iowa 2001) (citing elements of fraudulent misrepresentation and adding the "amount of damages" as an eighth element); *Midwest Home Distrib., Inc. v. Domco Industries Ltd.*, 585 N.W.2d 735, 738 (Iowa 1998) (citing elements).

As previously discussed, in this case, Dr. Blakely asserts that AOI promised that he would be paid between $350,000.00 and $400,000.00 per year. Dr. Blakely asserts that AOI fraudulently misrepresented the annual compensation that he would be paid. AOI denies that it ever promised Dr. Blakely a salary of that figure. AOI again points to the integration language of the physician agreement. AOI asserts that this allegation is completely contrary to the physician agreement which states that Dr. Blakely would be paid a draw of $150,000.00 per year as an advance payment against the annual compensation amount. Dr. Blakely asserts that he relied on AOI's "promise" and this was the reason he signed the physician agreement.

The court now turns to an examination of the record to consider the surrounding facts and circumstances of Dr. Blakely's contract negotiations and to determine whether a genuine issue of material fact exists as to whether AOI intended to deceive or defraud Dr. Blakely. *See Utica Mut. Ins. Co. v. Stockdale Agency*, 892 F.Supp. 1179, 1196-97 (N.D. Iowa 1995) (looking to the surrounding facts and circumstances to determine whether an intent to defraud existed); *Wilden Clinic, Inc. v. City of Des Moines*, 229 N.W.2d 286, 292 (Iowa 1975) ("Fraud may arise from facts and circumstances, and an *intent* to defraud may properly be inferred from circumstances, words, and actions shown in evidence.") (internal citations omitted). Dr. Blakely alleges he was promised a salary between $350,000.00 and $400,000.00 per year and this is why he accepted employment

with AOI. The court recognizes that during employment discussions it is likely that figures regarding the potential amount of compensation that Dr. Blakely could make were likely discussed. Dr. Blakely has proffered e-mails, an affidavit regarding his discussions with AOI representatives, and job postings as evidence of the representations made by AOI regarding compensation that he would receive if he accepted the employment offer from AOI. Plaintiff's Appendix Part 1. Considering the evidence proffered by Dr. Blakely, and giving Dr. Blakely, the nonmoving party, the benefit of all reasonable inferences, it is possible that a reasonable trier of fact could return a verdict for the nonmovant finding that regardless of the language of the contract, AOI falsely represented to Dr. Blakely that he would be paid between $350,000.00 and $400,000.00 per year, knowing that the actual figure of compensation would be less than the amount mentioned during employment discussions and intended to induce Dr. Blakely into signing the employment agreement with AOI; and, that Dr. Blakely justifiably relied on the figures provided by AOI and did not accept employment elsewhere because of his reliance. The court acknowledges there is a written contract. However, the manner in which employment negotiations were conducted might have lead Dr. Blakely to rely on the representation by AOI that the calculation formula would produce an amount between $350,000.00 and $400,000.00 per year in annual compensation. This claim is not a breach of contract claim, rather, it is a claim of fraudulent misrepresentation. The court finds there is a genuine issue of material fact as to whether Dr. Blakely agreed to sign the contract because it was represented to him that the calculation of his annual compensation would be between $350,000.00 and $400,000.00 per year. If AOI falsely and intentionally represented to Dr. Blakely the amount of compensation that would be generated by the calculation contained within the agreement, and this caused Dr. Blakely to sign the agreement and not accept other employment, regardless of the integration clause, AOI would have committed a fraudulent misrepresentation. The court finds that Dr. Blakely has proffered evidence and presented

genuine issues of material fact and AOI is not entitled to summary judgment on this claim.

### 3. Count IV - Violation of Iowa Code Chapter 91A Claim

Iowa's Wage Payment Collection Law, codified in Iowa Code Chapter 91A, requires an employer pay a terminated employee all wages earned up to the time of the termination not later than the next regular payday. Iowa Code § 91A.4.

Dr. Blakely contends that upon review of his Annual Compensation Amount, AOI has not paid him the proper amount. Dr. Blakely argues that he is owed additional money for his services. Dr. Blakely also contends that AOI is withholding additional compensation that is due and owing and that AOI is required to pay said amounts as required by Iowa Code Chapter 91A. AOI states with the exception of Dr. Blakely's own statement, the record is devoid of any material facts that AOI did not properly calculate the amount paid to Dr. Blakely. AOI asserts the only evidence Dr. Blakely has provided is his statement that, "The Plaintiff has informed Defendant, through his agents, that the calculations done by Anesthetix of Iowa, P.C., were improper and that the Plaintiff is owed additional money for his services." Dr. Blakely, however, has submitted to the court financial calculations in support of his claim.

Pursuant to Iowa law, employers are required to pay wages due employees. Employees are provided a mechanism whereby employees can collect unpaid wages that are due. AOI has provided to the court its accounting of Dr. Blakely's compensation. And, Dr. Blakely has provided to the court his accounting. The physician agreement states that the fiscal year used to calculate annual compensation is, "the fiscal year end of the Employer." Yet, the record indicates that AOI may have been calculating compensation not on a fiscal year but on a six month fiscal period. The court has reviewed the physician's agreement which provides the method for calculating Dr. Blakely's annual compensation and final payment. Dr. Blakely has proffered evidence to support a finding that AOI's method of calculating his compensation is in error, that there is an alternative

meaning to AOI's fiscal year, and that the amount AOI paid to Dr. Blakely after he was terminated is in error.

The court cannot find, based on this record, that there is no issue as to whether Dr. Blakely has received all wages for all services rendered, which is all Chapter 91A guarantees. Dr. Blakely has met his burden of proffering evidence that he might be entitled to additional wages and that AOI did not correctly calculate his annual compensation under the physician's agreement. Therefore, as to this issue, AOI's motion for summary judgment is denied.

## III. CONCLUSION

To summarize, Dr. Blakely's "race and national origin" claim based on U.S. citizenship is not cognizable under Title VII. Accordingly, AOI is entitled to summary judgment as to this claim. The court has determined that it will retain jurisdiction on Dr. Blakey's remaining state law claims. For the reasons discussed in this court's order, AOI's motion for summary judgment, as to Dr. Blakely's claim for breach of contract regarding termination, is granted. AOI's motion for summary judgment, as to Dr. Blakely's claim for breach of contract regarding a "promised" amount of compensation, is granted. AOI's motion for summary judgment, as to Dr. Blakely's claim for breach of contract regarding AOI's calculation of his annual compensation, is denied. AOI's motion for summary judgment, as to fraudulent misrepresentation, is denied. AOI's motion for summary judgment, as to Dr. Blakely's claim of wage and hour violations, is denied.

**IT IS SO ORDERED.**

**DATED** this 23rd day of June, 2005.

_Mark W. Bennett_
_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA